Filed 7/9/25  P. v. Ahmad CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMIL AHMAD,<br><br>    Defendant and Appellant. | H052057<br>(Santa Clara County<br>Super. Ct. No. CC511478) |

Appellant Jamil Ahmad was convicted of murder, assault with a semi-automatic firearm, and possession of a firearm in 2007, and was sentenced to 31 years plus 75 years to life with multiple enhancements.  The judgment was affirmed on appeal.[1]  In 2024, the trial court resentenced Ahmad pursuant to Penal Code section 1172.75[2] and imposed a new aggregate sentence of 13 years plus 50 years to life with enhancements for use of a firearm and great bodily injury during the commission of the crime.  Ahmad appeals from the resentencing order solely on the basis that the trial court failed to exercise its discretion under section 1385, subdivision (c)(2)(B) when it declined to dismiss at least one of the two remaining enhancements.  We find no error in the sentence imposed and affirm the judgment.

---

[1] (*People v. Ahmad* (Feb. 25, 2010, H032568) [nonpub. opn.].)
[2] Statutory references are to the Penal Code unless otherwise specified.

# I. FACTUAL AND PROCEDURAL BACKGROUND

*A. The Crimes*[3]

Ahmad and Shalisha Wiggins had a two-year relationship that resulted in the birth of their child, W., in 1988.

As of May 5, 2005, Wiggins was living with her boyfriend, Richard Garza, W., and her three other children in an apartment. That morning, at around 3:00 a.m., Wiggins and Garza were awakened by loud noises that sounded like someone was kicking the front door. Wiggins opened her bedroom door and saw that the front door was ajar and a man, Ahmad, was walking toward her. Ahmad was wearing sunglasses, gloves, and a durag to cover his identity. She noticed he was holding a gun turned sideways. Ahmad began shooting at Wiggins and Garza, who was standing behind her in the bedroom. The first shot hit Wiggins in the chest, just two inches from her heart. She sustained three more gunshot wounds to her hand and shoulder area. Garza was shot 11 times and died from multiple wounds. Ahmad fled.

In 2007, a jury convicted Ahmad of murder (§ 187, subd. (a); count 1), assault with a semi-automatic firearm (§ 245, subd. (b); count 2), and possession of a firearm by a felon (§ 12021.1, subd. (a); count 3). As to count 1, the jury found true that Ahmad discharged a firearm and caused the death of another (§ 12022.53, subd. (d)). The jury also found true the allegations attached to count 2: personal use of a firearm (§ 12022.5, subd. (a)) and personal infliction of great bodily injury (§ 12022.7, subd. (a)).

During a bifurcated proceeding, the court found that Ahmad suffered a prior strike conviction (strike prior) (§§ 667, subds. (b)–(i), 1170.12), a prior serious felony conviction (felony prior) (§§ 667, subd. (a)(1) & 1192.7) and had served two prior prison terms (prison priors) (§ 667.5, subd. (b)).

---

[3] Because the appeal is limited to the exercise of discretion on a sentencing enhancement, we state the facts related to the convictions summarily to provide context.

## B. Sentencing Hearing

At the original sentencing hearing in 2008, the trial court denied probation. As to count 1, the court doubled the base term of 25 years to life due to the strike prior to 50 years to life, plus imposed an additional 25 year to life term for a firearm enhancement (§ 12022.53, subd (d)), and a determinate term of five years for the serious felony prior. As to count 2, the court imposed the middle term of six years and doubled it due to the strike prior for 12 years and imposed consecutive terms of four years for the firearm enhancement (§ 12022.5, subd. (a)), and three years for great bodily injury (§ 12022.7, subd. (a)). As to count 3, the court imposed the middle term of four years and doubled it but ran it concurrently to count 2. Finally, the court imposed an additional five years for the serious felony prior, and two one-year terms for the prison priors on the determinate term. The total determinate term imposed by the trial court was 31 years, which included the concurrent term for possession of a firearm by a felon, followed by an indeterminate term of 75 years to life.

## C. The Resentencing Hearing

In October of 2022, Ahmad submitted a petition for recall and resentencing pursuant to sections 1172.75 and 1172.1, including the abstract of judgment and a letter detailing Ahmad's efforts at rehabilitation while incarcerated. The next month, the trial court denied the petition pursuant to section 1172.1, noting it had no discretion to recall and resentence.[4] However, because Ahmad's sentence was enhanced by two prison priors (§ 667.5, subd. (b)) which were no longer legally valid, the court found that Ahmad might be eligible for a resentencing and recall pursuant to section 1172.75,

---

[4] In 2023, section 1172.1 was amended to give the court discretion to recall and resentence outside the 120-day window if the sentencing law had changed since the imposition of original sentence. This petition was filed before the amendments became law; however, it is irrelevant since Ahmad received the full resentencing he was requesting pursuant to section 1172.75.

subdivision (a) and appointed counsel.  The court set the resentencing hearing for January of 2024.

Prior to the hearing, Ahmad's appointed counsel filed a brief requesting the trial court resentence Ahmad to a new term of six years plus 25 to life, striking not just the prison priors, but also the strike prior and all of the previously imposed conduct and status enhancements.  The brief detailed the trauma Ahmad experienced as a child, his extensive rehabilitative efforts while incarcerated, the insight he had gained into both his life choices and his addiction since his incarceration, his community and family support, and his parole and relapse prevention plans.  In the brief, Ahmad made a *Romero* motion (*People v. Romero* (1996) 13 Cal.4th 497) pursuant to section 1385, subdivision (c)(2)(E), and argued that said section "require[d] the Court to consider and give great weight to the fact that the current offense is connected to [ ] Ahmad's prior victimization or childhood trauma."  Ahmad submitted over 100 pages of letters and statements of support, certificates of completion of programming, and his parole plans.  The brief, however, did not specifically address section 1385, subdivision (c)(2)(B), which identifies multiple enhancements in a single case as one of the mitigating circumstances for the court to consider when deciding whether to dismiss enhancements during resentencing.

The prosecution submitted a sentencing memorandum in December of 2023, and conceded that Ahmad should be resentenced, but contended only the prison priors should be stricken under section 1172.75.  The prosecution opposed the *Romero* motion and urged the court not to exercise its section 1385 authority as to the enhancements.

The prosecution's memorandum also included facts of Ahmad's prior convictions. In 1991, Ahmad sustained the strike prior and serious felony prior after being convicted of a robbery (§ 211) for stealing a car at gun point.  In 1999, Ahmad inflicted corporal injury on his then-wife, causing bruising to her forehead, swelling to her lips, and redness

4

to her face. He was convicted of domestic violence (§ 273.5, subd. (a)), sentenced to prison in 2000, and sustained one of the two prison priors imposed in the current case. The other prison prior arose out of a term Ahmad served after being convicted of possession of a controlled substance in violation of Health and Safety Code section 11350 in 1999. Ahmad was also previously convicted of a separate charge of Health and Safety Code section 11350 in 1988; violations of section 626.8, section 12034 subdivision (b), section 148, subdivision (a)(1), and Vehicle Code section 23103 in 1990, and another violation of section 148, subdivision (a)(1) in 1998.

The prosecution's sentencing memorandum also noted that two months after the shooting and before his arrest in this case, Ahmad fled from the California Highway Patrol when they attempted to investigate him for a minor traffic violation. At the time, Ahmad was driving a stolen vehicle. He led law enforcement on a chase on city streets exceeding 80 miles per hour and ran at least one stop sign. Ahmad crashed the car and then ran away on foot. He was convicted of a violation of Vehicle Code section 2800.2 and sentenced to state prison. Ahmad was serving a prison term for that offense when he was charged with the current crimes.

At the resentencing hearing in 2024, the trial court heard from Wiggins, Garza's two sisters, and three other family members. Ahmad's daughter, nephew, sister, co-workers, and a potential employer spoke on his behalf. Ahmad also testified as to his transformation since his incarceration and was cross-examined by the prosecution. Both parties made arguments supporting their positions. The prosecution urged the court not to exercise its *Romero* discretion to strike the strike prior nor its discretion to dismiss the firearm enhancement pursuant to section 1385, subdivision (c), stating "You have no obligation to dismiss the firearm enhancement. You just have an obligation to give the evidence that's been provided great weight. And of course I know the Court's going to do that."

The trial court declined to strike Ahmad's strike prior noting "I do not believe that you fall outside the spirit of the Three Strikes Law." However, the court did exercise its discretion to strike the firearm enhancement in count 1 and both serious felony prior status enhancements pursuant to section1385, subdivision (c). The court then indicated, "[w]hen it comes to Count 2, the assault with the firearm, it is within my discretion to strike the enhancements on that as well. However, I agree with [the prosecutor] that the victim in that case deserves to have a [great bodily injury] enhancement and a firearm enhancement. So, the Court, based upon the change in law, chooses not to exercise its discretion as to the . . . four-year gun enhancement or the three-year [great bodily injury] enhancement." The court chose the low term of three years on count 2 and doubled it pursuant to the strike prior, ran the enhancements consecutively, and imposed the middle term on count 3 and doubled it but ran it concurrently to count 2. For count 1, the murder of Garza, the court doubled the 25 years to life sentence. The aggregate prison term imposed by the court totaled 13 years plus 50 years to life.

The court concluded the sentencing hearing noting to Ahmad "I do want you to understand that the only reason that you got the exercise of my discretion as I did was because of the conduct, the good conduct that I think you have engaged in certainly for the last nine or so years. But I do think that true justice requires this Court to continue to honor what occurred in 2005, and to ensure that I apply the law in a way that is fair to the victims as well."

Ahmad's trial attorney did not object during the hearing to the manner or extent the trial court exercised its discretion under section 1385 with regard to the enhancements.

## II. DISCUSSION

Section 1385 governs the trial court's discretionary authority to strike or dismiss sentencing enhancements. In 2022, the legislature amended the statute by adding

6

language under subdivision (c) to provide guidance on the trial court's exercise of its discretion under section 1385. (*People v. Anderson* (2023) 88 Cal.App.5th 233, 238 (*Anderson*).) Subdivision (c) includes a list of mitigating circumstances that, if shown by the defendant to be present, the trial court "shall consider and afford great weight[.]" (§ 1385, subd. (c).) These circumstances are not exclusive "and the court maintains authority to dismiss or strike an enhancement in accordance with subdivision (a)." (*Id.*, subd. (c)(4).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Of relevance here is the mitigating circumstance listed under subdivision (c)(2)(B) which states: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed."

Ahmad asserts the trial court failed to exercise its discretion when it declined to strike at least one of the two enhancements on count 2 (firearm enhancement and great bodily injury enhancement) and failed to expressly state that dismissal of the enhancement was not in the interest of justice pursuant to section 1385. Specifically, Ahmad contends the trial court "failed to give great weight to the presence of multiple enhancements" and failed to adhere to the statute's purported directive that, with respect to multiple enhancements, "all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).) The Attorney General contends Ahmad forfeited this argument by failing to raise the issue before the trial court, and even if the issue is not forfeited, the trial court acted within its discretion in imposing punishment for both enhancements. We address each of those arguments in turn and discern no error.

### A. Forfeiture

Ahmad concedes that his trial attorney did not object to the trial court's sentencing, did not raise a specific argument under section 1385, subdivision (c)(2)(B)

for multiple enhancements, and did not make the arguments that Ahmad now makes on appeal before the trial court. Ahmad acknowledges that it is his responsibility to bring any errors in sentencing to the attention of the trial court. Failure to do so results in forfeiture. (*People v. Scott* (1994) 9 Cal.4th 331, 351-354; *People v. Anderson* (2020) 9 Cal.5th 946, 961.) This includes failing to invite the court to exercise its discretion pursuant to section 1385. (*People v. Carmony* (2004) 33 Cal.4th 367, 375–376 (*Carmony*).) Failure to raise a more specific argument for relief pursuant to subdivision (c) of section 1385 also forfeits that argument on appeal. (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724–725 (*Coleman*).) In *Coleman*, it was noted that it was assumed "the trial court was aware of and followed applicable law. [Citation]. Defendant's citation to a silent record is insufficient to meet his burden to demonstrate an abuse of discretion. [Citation]" (*Id*. at p. 725.)

Instead, Ahmad argues that forfeiture does not apply because he claims that, at the time of his resentencing hearing, the law surrounding section 1385, subdivision (c), was still undecided. Thus, Ahmad contends he should not be penalized for his attorney not appreciating the point and his failure to raise the issue before the trial court should be excused. We are not persuaded.[5] The legislature enacted subdivision (c), inclusive of the list of mitigating circumstances, in 2022, two years before Ahmad's resentencing hearing in 2024. (§ 1385, as amended by stats.2021, ch. 721, § 1, eff. Jan. 1, 2022.) The court's discretionary authority under section 1385, subdivision (c)(2)(B), to strike multiple enhancements existed at the time of his resentencing hearing and Ahmad failed to address it. Ahmad argues that because *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*) was

[5]Notably, Ahmad's appointed trial attorney did request the trial court to exercise its discretion to dismiss the enhancements under section 1385, subdivision (c), but raised arguments only as to the mitigating circumstance under (c)(2)(E) ("prior victimization or childhood trauma"), and not (c)(2)(B) for multiple enhancements. That the trial attorney was aware of and sought relief under section 1385, subdivision (c) at the hearing undermines Ahmad's arguments that the law was unclear.

pending before the Supreme Court, the law regarding the court's exercise of its discretionary authority under section 1385, subdivision (c) was unsettled.[6]  However, the sole question pending before the Supreme Court was whether the existence of a mitigating factor under section 1385, subdivision (c), created a *mandatory* presumption of dismissal of the enhancement(s).  The law was well settled that the trial court must exercise its discretion pursuant to section 1385, subdivision (c) in any resentencing or other proceeding.  (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)  Thus, Ahmad's failure to raise any objection as to how the court exercised that discretion or to articulate a specific argument for relief under said section, forfeited the argument.  (*Coleman*, *supra*, 98 Cal.App.5th at pp. 724–725; *Anderson*, *supra*, 88 Cal.App.5th at p. 242.)

Finally, Ahmad relies on *Anderson*, *supra*, 88 Cal.App.5th at page 239, footnote 7, to support his position that if the trial court's interpretation of section 1385, subdivision (c) would result in an unauthorized sentence, then his argument is not subject to forfeiture.  In *Anderson*, the defendant raised for the first time on appeal that, as a matter of law, the word "shall" under section 1385, subdivisions (c)(2)(B) and (C) required a mandatory dismissal of certain enhancements.  (*Anderson* at p. 239.)  The Court of Appeal, Second District, determined that the argument was not forfeited because, if the defendant's interpretation was valid, the court's orders would have resulted in an unauthorized sentence.  (*Id.* at p. 239, fn. 7.)  In contrast, Ahmad has not raised any questions of statutory interpretation nor any argument that the trial court's sentencing determinations were unauthorized as a matter of law.  Ahmad's sole contention is that the trial court failed to appropriately exercise its discretion under the directives set out in section 1385.  However, as discussed above, the court's discretion

---

[6] The Supreme Court resolved this issue in *Walker*, concluding that subdivision (c)(2) "does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety."  (*Walker, supra,* 16 Cal.5th at p. 1033.)

existed at the time of the sentencing, the court did exercise it on the record, and any question about its application should have been addressed in court or forfeited. The sentence was not unauthorized either at the time of imposition or post-*Walker*.

B. *Abuse of Discretion*

However, even absent forfeiture, Ahmad's claim that the trial court failed to appropriately exercise its discretion under section 1385 falls short.[7]

Section 1385, subdivision (c), states "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Id.*, subd. (c)(2).) The mitigating circumstance at issue on this appeal falls under section 1385, subdivision (c)(2)(B), where there are multiple enhancements present in a single case.

When a section 1385, subdivision (c) factor is present, "absent a danger to public safety the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight

---

[7] Because we consider Ahmad's claim on the merits, we need not address Ahmad's alternative claim of ineffective assistance of counsel. (See *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing appellant's claim on the merits to avoid potential claim of ineffective assistance of counsel]; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"].)

of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]" (*Walker*, *supra*, 16 Cal.5th at p. 1036.)

A court's exercise of discretion pursuant to section 1385 is reviewed for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 374; *People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A court abuses its discretion when it fails to exercise discretion, acts arbitrarily or capriciously, relies on irrelevant circumstances or circumstances that constitute an improper basis. (*Sandoval,* at p. 847) The court also abuses it discretion if it makes a sentencing choice without being aware of the scope of its discretion. (*People v. Tirado* (2022) 12 Cal.5th 688, 694*; People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390–1391.) The trial court is presumed to have acted to achieve legitimate sentencing objectives. (*Carmony, supra*, at p. 377.) "Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) "Remand for resentencing is not required, however, if the record demonstrates the trial court was aware of its sentencing discretion. . . . ' "[A] trial court is presumed to have been aware of and followed the applicable law." [Citations.]' [Citation.]" (*Id.* at pp. 1228–1229.)

Here, the record shows that the trial court not only acknowledged its discretion under section 1385, subdivision (c), it also exercised that discretion appropriately. On the record, the trial court expressed that it had weighed the criminal conduct of Ahmad and the applicable post-conviction factors,[8] and dismissed several sentencing enhancements,

---

[8] Amongst other things, when resentencing pursuant to section 1172.75, the court must apply the "sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing. [¶] [ ] The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of

11

citing section 1385, subdivision (c) as the authority for its discretion to do so. The trial court reviewed and weighed Ahmad's criminal history, the violence of his actions in the current case, and acknowledged the strides Ahmad had made in prison, and then denied his *Romero* motion. The court then turned to the enhancements and specifically noted its authority under section 1385, subdivision (c) to consider whether to strike any or all of them: "I do have separate discretion as to the other enhancements." The trial court exercised the same discretion to strike the two serious felony priors. And then, most relevantly, the trial court recognized that it was also within its discretion to strike the two enhancements (great bodily injury and firearm) attached to count 2, but declined to strike them.

When the record demonstrates that the trial court was aware of its sentencing discretion, remand is unnecessary. (*People v. Brown* , *supra*, 147 Cal.App.4th at p. 1228.) Contrary to the assertion that the court failed to consider the 1385, subdivision (c) mandate, the record establishes the trial court understood its discretion under the statute, and as *Walker* requires, engaged in a weighing of factors and found that it was not in the interest of justice to dismiss all the enhancements. (*Walker, supra*, 16 Cal.5th at pp.1034–1036.) There is no evidence to suggest that the exercise of discretion not to strike the remaining enhancements was arbitrary, capricious or patently absurd resulting in a miscarriage of justice or abuse of discretion. (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322.) On the record before us, we cannot conclude that the trial court's decision to not strike at least one of the two remaining enhancements, after

---

rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subds. (d)(2) & (d)(3).)

12

striking multiple others, exceeded the bounds of reason such that it constituted an abuse of discretion.

Moreover, "[w]e presume that the trial court acted to achieve legitimate sentencing objectives. [Citation.] The burden is on the party challenging the sentencing decision to show that the court abused its discretion. [Citation.] We may not presume error from a silent record. [Citation.] 'Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules.' [Citations.]" (*People v. Knowles* (2024) 105 Cal.App.5th 757, 764–765; see also Cal. Rules of Court, rule 4.409 [all relevant sentencing factors "will be deemed to have been considered unless the record affirmatively reflects otherwise."].)

Ahmad's arguments that the trial court's failure to name the individual applicable circumstances it considered under section 1385, subdivision (c) and to appreciate the "forceful directive" that all enhancements beyond a single enhancement shall be dismissed are not persuasive for two reasons. First, although the record is silent as to what consideration the trial court gave to the specific mitigating factor for multiple enhancements under section 1385, subdivision (c)(2)(B),"[e]rror may not be presumed from a silent record. [Citation.] ' "[A] trial court is presumed to have been aware of and followed the applicable law." [Citations.]' [Citation.]" (*Brown, supra*, 147 Cal.App 4th at p. 1229). Secondly, the existence of multiple enhancements does not create a mandatory and automatic dismissal of all but one enhancement. (*Anderson*, *supra*, 88 Cal.App.5th at p. 240 [the use of the word "shall" in section 1385, subdivision (c)(2)(B) does not make the dismissal mandatory, but provides the court with discretion in deciding whether to do so].) In sum, as the record demonstrates, the court understood and exercised its discretion. Ahmad has not affirmatively shown the court erred in not dismissing one or both of the additional enhancements in resentencing him.

### III.    DISPOSITION

The judgment is affirmed.

_____

Rodriguez, J.*

WE CONCUR:

_____

Grover, Acting P. J.

_____

Danner, J.

*People v. Ahmad*
H052057

_____

* Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.